UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------X
                                                    :
THE CHARTER OAK FIRE INSURANCE COMPANY,             :
                                                    :
                                Plaintiff,          :
                                                    :            24-CV-6322 (JMF)
                -v-                                 :
                                                    :            OPINION AND ORDER
HDI-GERLING AMERICA INSURANCE COMPANY,              :
                                                    :
                                Defendant.          :
                                                    :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

This case concerns a dispute between two insurance companies, both of which claim the

other has the primary duty to defend and indemnify two defendants in a personal injury lawsuit

("the Underlying Action") filed in state court.  The accident that gave rise to that lawsuit

occurred in a commercial space in Manhattan owned by Crale Realty, LLC ("Crale"), which was

leased to Dukane Fabrics Intl. Inc. ("Dukane"), and, in turn, subleased to Euromarket Designs,

Inc. ("Euromarket").  To date, Charter Oak Fire Insurance Company ("Charter Oak"), Dukane's

insurer, has been defending both Dukane and Crale in the Underlying Action.  Charter Oak filed

this suit seeking a declaration that HDI-Gerling America Insurance Company ("HDI"),[1]

Euromarket's Insurer, should take over that defense, indemnify Dukane and Crale, and reimburse

Charter Oak for all defense costs it has so far incurred.  Each side now moves, pursuant to Rule

56 of the Federal Rules of Civil Procedure, for summary judgment.  For the reasons that follow,

the Court agrees that HDI owes a duty to defend and indemnify Dukane and Crale and that any

---

[1]     HDI is apparently now called HDI Global Insurance Company.  *See* ECF No. 41 ("Pl.'s Mem."), at 1 n.1.

coverage by Charter Oak is secondary to HDI's.  For that reason, Charter Oak's motion for summary judgment is GRANTED in full, and HDI's cross-motion is DENIED.

## BACKGROUND

The relevant facts, taken from admissible materials submitted by the parties in connection with their cross-motions, are undisputed.

### A.  The Relevant Agreements

In 2007, Euromarket, which does business as Crate and Barrel, entered into a sublease for a property on Broadway in New York City.  ECF No. 49 ("Def.'s 56.1 Stmt."), ¶ 1.  The property was subleased to Euromarket by Dukane, *id.* ¶ 2, which, in turn, leased it from the owner of the building, Crale, *id.* ¶ 3.  As relevant here, Euromarket's sublease contained a clause stating that Euromarket agreed to procure "a commercial general liability insurance policy" that included its "Landlord, Owner and any Superior Instrument Holder as additional insureds" and "protect[ed them] against any liability whatsoever, occasioned by any occurrence on or about the Premises."  ECF No. 35-4 ("Sublease"), at 18.

In 2015, Euromarket acquired a commercial general liability insurance policy (the "HDI Policy") for the property from HDI.  *See* Def.'s 56.1 Stmt. ¶ 6; ECF No. 35-3 ("HDI Policy"), at 3.  The HDI Policy had a coverage period from August 1, 2015, through August 1, 2016.  *Id.* Appended to it are several endorsements, all of which include the following text in all capital letters: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  *E.g.*, HDI Policy 25.  Eight of the endorsements define categories of "additional insureds."  *E.g.*, *id.* at 50 ("Engineers, architects, or surveyors not engaged by the named insured").  For most, no specific party is identified as an additional insured.  Instead, in a box labeled "Name of Additional Insured Person(s) Or Organization(s)," each endorsement

states: "As required by a written contract or agreement." *See, e.g.*, *id.* at 47. One such

"additional insured" endorsement (the "Owner Endorsement") is labeled "Owners, Lessees or

Contractors" and applies with respect to "bodily injury . . . caused, in whole or in part, by . . .

[Euromarket's] acts or omissions . . . in the performance of [its] ongoing operations for the

additional insured(s)." *Id.* at 41. Another (the "Lessor Endorsement") is labeled "Managers or

Lessors of Premises" and applies to "liability arising out of the ownership, maintenance or use of

that part of the premises leased to [Euromarket]." *Id.* at 43.

The HDI Policy also has two provisions addressing its relationship to other insurance

policies. First, in the main body of the Policy, there is a section titled "Other Insurance." In the

"Primary Insurance" clause of the "Other Insurance" section, it states: "This insurance is primary

except when Paragraph b. below applies." *Id.* at 18. Paragraph b. is the "Excess Insurance"

clause, and it identifies categories of insurance — none of which are relevant here — over which

the Policy is excess. *Id.* The Policy also has an endorsement titled "Primary and

Noncontributory – Other Insurance Condition." *Id.* at 40. It provides as follows:

> This insurance is primary to and will not seek contribution from any other
> insurance available to an additional insured under your policy provided that:
>
> (1) The additional insured is a Named Insured under such other insurance; and
>
> (2) You have agreed in writing in a contract or agreement that this insurance
> would be primary and would not seek contribution from any other insurance
> available to the additional insured.

*Id.*

Around the same time that Euromarket acquired the HDI Policy, Dukane acquired a

commercial general liability insurance policy (the "Charter Oak Policy") for the same property

from Charter Oak. ECF No. 35-1 ("Charter Oak Policy"), at 4. Its policy period was from

December 1, 2015, through December 1, 2016. *Id.* The Charter Oak Policy included an "Other

Insurance" provision similar to the one in the HDI Policy, stating that it was "primary except when" certain exceptions — none of which are relevant here — applied. *Id.* at 150. It also included an endorsement amending the original "Other Insurance" provision by stating that the insurance was excess over "[a]ny of the other insurance, whether primary, excess, contingent or on any other basis . . . [t]hat is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy." *Id.* at 150, 165.

## B. The Underlying Action

On April 11, 2018, Mark and Katherine Cascarella sued Crale, Dukane, Euromarket, and an additional party in New York State court alleging that Mark Cascarella had been injured while working at the property in question on December 28, 2015. ECF No. 51 ("Pl.'s 56.1 Counter-Stmt."), ¶¶ 13-14. Charter Oak undertook the defense of Crale and Dukane but tendered the defense and indemnification of those parties to HDI. ECF No. 40 ("Pl.'s 56.1 Stmt."), ¶¶ 38-53. HDI did not agree to defend or indemnify Crale or Dukane. Charter Oak subsequently filed this suit, seeking a declaration that HDI owed a duty to defend and indemnify Crale and Dukane and seeking damages for costs that it has already incurred in defending the Underlying Action. *See* ECF No. 1, ¶¶ 1-2, 49-53.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35

(2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  "Summary judgment is particularly appropriate in resolving insurance coverage disputes, because the interpretation of an insurance policy presents a question of law."  *Const. Reins. Corp. v. Stonewall Ins. Co.*, 980 F. Supp. 124, 127 (S.D.N.Y.1997).

Where both sides move for summary judgment, as here, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Id.* (internal quotation marks omitted).  To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## DISCUSSION

There are two broad questions raised in this case. The first is whether Crale is an additional insured under the HDI Policy at all. The second is what the priority of coverage is between the Charter Oak Policy and the HDI Policy. The Court will address each in turn.

### A. Whether Crale Is an Additional Insured

First, the Court agrees that Crale is an additional insured under the HDI Policy pursuant to the Lessor Endorsement, which — its title notwithstanding — applies to "liability arising out of the ownership, maintenance or use of that part of the premises leased to [Euromarket]." HDI Policy 43. It is well established that, "when determining whether a third party is an additional insured under an insurance policy, a court must ascertain the intention of the parties to the policy, as determined from within the four corners of the policy itself." *Cincinnati Ins. Co. v. Harleysville Ins. Co.*, 709 F. App'x 71, 74 (2d Cir. 2017) (summary order) (cleaned up). Crale falls within the endorsement's scope as an initial matter because — in addition to owning the property — it is leasing the property to Dukane and, thus, qualifies as a "lessor." *See Lessor*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "lessor" as "[s]omeone who conveys real or personal property by lease"); *see also Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012) ("Terms in an insurance contract must be given their plain and ordinary meaning." (internal quotation marks omitted)). Were there any doubt on this score, the plain language of the endorsement would resolve it. It states (with exceptions not relevant here) that the Policy covers any person "[a]s required by written contract or agreement" and with respect to any "liability arising out of the ownership, maintenance or use of" the leased premises. HDI Policy 43. Coverage of Crale was required by written contract because Euromarket's sublease required that it "protect[]" both Dukane and Crale by providing a "commercial general

6

liability insurance policy" that insured them "against any liability whatsoever, occasioned by any occurrence on or about" the property. Sublease 18. And it is undisputed that Crale's liability arises out of the "ownership, maintenance or use" of the property.

Notwithstanding the foregoing, HDI contends that Crale is not covered as an additional insured under the HDI Policy because the Owner Endorsement, not the Lessors Endorsement, applies. HDI Policy 41; *see* ECF No. 48 ("Def.'s Mem."), at 12-13. Like the Lessor Endorsement, the Owner Endorsement does not specify any additional insured; instead, it states that it applies "[a]s required by a written contract or agreement." HDI Policy 41. The Owner Endorsement, however, is more limited than the Lessor Endorsement in that it covers only liability that arises as a result of Euromarket's actions "in the performance of [its] ongoing operations *for the additional insured(s)*" in question "at the location(s) designated," *id.* (emphasis added) — which, it is undisputed, would not extend to Crale in this case. HDI argues that Crale is an additional insured, if at all, only under the Owner Endorsement because when the endorsements in question state that they cover parties as required by any "written contract or agreement," they are referring specifically to the sublease that Euromarket had signed with Dukane. The sublease, HDI notes, identifies Crale as "the owner of the Building (the 'Owner')," not the lessor of the property. Sublease 7. The Policy, HDI asserts, was intended to adopt that definition.

HDI's arguments are unpersuasive. For one, the HDI Policy nowhere refers to Euromarket's sublease or purports to adopt its definitions of terms, and "[a] court may not write into a contract conditions the parties did not insert . . . under the guise of construction." *Moore v. Cohen*, 548 F. Supp. 3d 330, 341 (S.D.N.Y. 2021) (internal quotation marks omitted). HDI's argument that the Policy was drafted to adopt or align with the sublease's definitions is

particularly implausible given that it would mean that Euromarket violated the sublease by acquiring the HDI Policy, which — according to HDI — provided only incomplete coverage to Crale. On top of that, many other endorsements in the HDI Policy that could not plausibly refer to the sublease also identify additional insureds "[a]s required by a written contract or agreement." For example, endorsements targeting "Governmental Agenc[ies]," HDI Policy 44; "Lessor[s] of Leased Equipment," *id.* at 49; and "Engineers, Architects or Surveyors Not Engaged by the Named Insured," *id.* at 50, identify categories of additional insureds implicated nowhere in the sublease, yet include the same language. "Terms in a document . . . normally have the same meaning throughout the document," *Maryland Cas. Co. v. W.R. Grace & Co.*, 128 F.3d 794, 799 (2d Cir.1997), and HDI offers no explanation for why the phrase "as required by a written contract or agreement" would require reference to the sublease's definitions in some sections of its Policy but not others.

HDI's argument also rests on the premise that each endorsement identifying additional insureds was intended to be mutually exclusive. That premise, however, does not withstand scrutiny. Most prominently, one of the additional insured endorsements (not relied on by Charter Oak here) applies to any "Designated Person or Organization" — with the only limitations being that the coverage must be, again, as "required by a written contract or agreement" and that the liability must arise through Euromarket's acts in the performance of its operations or in connection with the property. HDI Policy 47. HDI also has no response to why the Lessor Endorsement would state that it covers liability arising out of "ownership" of the premises if it was specifically intended to exclude owners, which are addressed in a separate endorsement. *Id.* at 43. Finally, to the extent that HDI relies on the titles of the Lessor and Owner Endorsements, its "reliance . . . is misplaced" because it is well established that "a heading cannot alter the

effect of the unambiguous language in the body of the clause itself." *AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc.*, 961 N.Y.S.2d 3, 5 (App. Div. 1st Dep't 2013) (cleaned up).

In short, Crale qualifies as an additional insured under the HDI Policy.

## B. Priority of Coverage

The next question the parties raise is which policy has primary responsibility for defending and indemnifying Dukane and Crale. Once again, the Court agrees with Charter Oak that the Charter Oak Policy is excess to the HDI Policy.

When two insurance policies both provide coverage to the same party or parties, "priority of coverage . . . among the policies is determined by comparison of their respective 'other insurance' clauses." *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*, 878 N.Y.S.2d 339, 344 (App. Div. 1st Dep't 2009). Here, the Charter Oak Policy's "Other Insurance" clause renders it an excess policy. Incorporating the endorsement that modifies the "Other Insurance" provision, the Charter Oak Policy provides in no uncertain terms that it is excess over "[a]ny of the other insurance, *whether primary, excess, contingent or on any other basis* . . . [t]hat is available to the insured when the insured is added as an additional insured under any other policy, *including any umbrella or excess policy*." Charter Oak Policy 150, 165 (emphases added). HDI's only argument for why this language does not directly resolve the priority question is to claim that the endorsement conflicts with another clause in the Charter Oak Policy's "Other Insurance" provision, which provides that the Charter Oak Policy is excess over "[a]ny other *primary insurance* available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." *Id.* at 150 (emphasis added). HDI's argument appears to be that because one

clause provides that the policy is excess over other primary insurance, and the other says it is excess over primary *and* excess policies, the two clauses are in conflict.

Once again, HDI's argument is unpersuasive. Both clauses identify categories of policies over which the Charter Oak Policy is excess, and neither contradicts the other. To be sure, there might be some overlap between the two provisions in that they both provide, in different ways, that the Charter Oak Policy is excess over the same alternate policies. But that does not make them conflicting; it makes them consistent. In any event, even if the Court did need to decide whether the "Other Insurance" provision in the body of the policy or the endorsement should control, HDI's own arguments for how to resolve that same issue as to its own policy apply here as well. The Charter Oak Policy's endorsement begins with the following admonition in all capital letters: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." *Id.* at 165. A few lines below, it states that "[t]his endorsement *modifies insurance provided*" in the body of the Policy. *Id.* Under New York law, an insurance policy with an endorsement must be construed "as altered by the words of the endorsement." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013) (internal quotation marks omitted). Given that, and the plain language of the endorsement, the endorsement controls.

Whether the HDI Policy is a primary or excess policy is a more difficult question, but the Court need not and does not resolve it because, either way, the result is the same. Under New York law, "an insurance policy which purports to be excess coverage but . . . does not by the language used negate th[e] possibility" of contribution with other excess policies is primary to "a policy which expressly . . . manifests that it is intended to be excess over other excess policies." *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1435 (S.D.N.Y. 1991)

(quoting *State Farm Fire & Cas. Co. v. LiMauro,* 482 N.E.2d 13, 18 (N.Y. 1985)); *see Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 122 F. Supp. 3d 143, 149 (S.D.N.Y. 2015) (calling this the "*LiMauro* Rule").  Here, the Charter Oak Policy provides that it is excess over even other excess insurance, which means that it is excess to the HDI Policy even if the latter's Other Insurance endorsement means that it is generally excess to other primary policies.  That is, the HDI Policy — construed as HDI itself suggests — does not directly state that it is excess; it merely states a condition — which the Court can assume *arguendo* is a necessary condition — for it to be primary.  It is therefore, under New York law, primary to the Charter Oak Policy, which provides that it is excess to any other insurance "available to the insured . . . including any umbrella or excess policy."  Charter Oak Policy 165; *see Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 653 F. App'x 66, 69 (2d Cir. 2016) (summary order) (stating that a policy that is "merely excess" is primary to a policy that is "excess to excess").

HDI makes no argument for why, if its Policy is primary to the Charter Oak Policy, a duty to defend and indemnify Dukane and Crale would not attach.  Given that the claims by Dukane and Crale "actually lie[] within [the HDI P]olicy's coverage," *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 249 (S.D.N.Y. 2019), and that, under New York Law, "[a]n insurer's duty to defend its insured is exceedingly broad," *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 930 N.E.2d 259, 261  (2010) (internal quotation marks omitted), there is no reason to question HDI's forfeiture of any argument to the contrary.

## CONCLUSION

For the reasons stated above, the Court holds (1) that HDI owes Dukane and Crale a duty to defend in the Underlying Action, (2) that HDI owes Dukane and Crale a duty to indemnify in the Underlying Action, and (3) that Charter Oak's coverage obligations to Dukane and Crale are

excess to those of HDI with respect to the Underlying Action.  Accordingly, Charter Oak's motion for summary judgment is GRANTED and HDI's cross-motion is DENIED.

The parties shall confer and, **within three weeks of the date of this Opinion and Order**, file a joint letter advising whether there is agreement with respect to the amount that HDI should pay Charter Oak to reimburse its costs in defending Dukane and Crale in the Underlying Action to date.  If the parties do agree on an amount, and there is nothing else to resolve, they should file a proposed judgment consistent with this Opinion and Order and their agreement.  If the parties do not agree, they should (1) provide their views on how to resolve any disagreement, including, if appropriate, a briefing schedule; and (2) indicate whether referral to a Magistrate Judge or the Court-annexed mediation program for settlement would be appropriate.

The Clerk of Court is directed to terminate ECF Nos. 37 and 47.

SO ORDERED.

Dated: September 8, 2025
      New York, New York

_____
JESSE M. FURMAN
United States District Judge